# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE PLUMBERS, PIPEFITTERS & MECHANICAL EQUIPMENT SERVICE, LOCAL UNION NO. 392 PENSION FUND, *et al.*,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>R. KELLY, INC.,<br>　　　Defendant. | Case No. 1:12-cv-710<br><br>Litkovitz, M.J<br><br>**ORDER** |

Plaintiffs are comprised of five Boards of Trust Funds affiliated with the Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 (the Union) and seek summary judgment on their claims that defendant R. Kelly, Inc. (R. Kelly) is liable to plaintiffs under Section 502 of the Employee Retirement Income Security Act (ERISA) and Section 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. §§ 1132 and 185, for liquidated damages stemming from a late benefits contribution payment and associated attorneys' fees and costs owed under collective bargaining agreements. Plaintiffs also seek an order requiring R. Kelly to comply with a payroll audit of R. Kelly's payroll records under these same agreements. (Doc. 18, Amended Complaint).

This matter is before the Court on plaintiffs' motion for summary judgment (Doc. 29) R. Kelly's memorandum in opposition (Doc. 33), and plaintiffs' reply. (Doc. 36). Also before the Court is R. Kelly's related motion to strike evidence submitted by plaintiffs in support of their summary judgment motion (Doc. 34) and plaintiffs' response in opposition. (Doc. 35).

**I. Undisputed Facts**

Plaintiffs are the Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 (the Union) and several Boards of Trustees (the Trustees)[1] charged with the administration of various funds held by the Union. (Doc. 18, ¶¶ 3-5, Amended Complaint). The Trust Fund Board of Trustees oversees the administration of the trust funds which receive contributions from employers, the Union, and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO (the National Union). (*Id.*, ¶¶ 3-6). R. Kelly is an Ohio corporation with its principal place of business in Cincinnati, Ohio. (Doc. 19, ¶ 2, Answer to Amended Complaint).

R. Kelly is subject to the provisions of the National Pneumatic Control Systems Agreement (the National Agreement). (Doc. 29, Ex. A-7, ¶ 1, R. Kelly's Response to Requests to Admit; Doc. 33, Ex. B1, ¶ 2 Affidavit of Ray Kelly).[2] Consequently, R. Kelly is bound by certain terms of the Local Collective Bargaining Agreement (Local Agreement) regarding the payment of fringe benefit contributions to the plaintiffs. (Doc. 29., Ex. A-7, ¶ 2; Doc. 33, Ex. B1, ¶ 2). Specifically, the National Agreement provides:

> For employees covered by this Agreement, wage rates, workmen's compensation, hours of work, reporting pay premiums, on call time, pay differentials, and contributions or deductions for plans, programs, or funds, for union dues, pensions, health and welfare, training, vacations and holidays, supplemental unemployment benefits, sick pay, severance pay and industry promotion shall be in accordance with those established for all employees in local agreements, negotiated by the local union of the United Association and the historically recognized local Contractor's bargaining group.

---

[1] These are the Board of Trustees for the Union's Pension Fund; the Board of Trustees for the Union's Health & Welfare Fund; the Board of Trustees for the Union's Sub Fund; the Board of Trustees for the Union's Education Trust Fund; and the Board of Trustees for the Cincinnati Plumbing and Pipefitting Industry Promotion Trust Fund. (Doc. 18, ¶¶ 2-5).

[2] Ray Kelly is the Chief Operating Officer of R. Kelly. (Doc. 33, Ex. B1, ¶ 1).

(Doc. 29, Ex. A-12, ¶ 46, the National Agreement). The National Agreement further provides:

> The Employer[3] agrees to be bound by the Declarations of Trust establishing the local union trusts to which the Employer is required to contribute pursuant to Article X, Paragraph 46 above of this Agreement and the Employer agrees to be bound thereby and by all amendments made thereto the same as if the Employer was a party to said Declarations of Trust.

(*Id.*, ¶ 58).

Being bound by the above provisions, R. Kelly is required under the Local Agreement to submit monthly reports of its fringe benefit contributions and payments for work performed by covered employees. (Doc. 29, Ex. A-4, § VIII, ¶ 9, Local Agreement). The following provision governs the procedure for submitting these reports and making contribution payments:

> All reports and contributions shall be submitted by the employer to the bank by the fifteenth (15th) day of the month for employees' hours accrued during the immediately preceding month. Employers whose contributions are not received by the bank or postmarked by the fifteenth (15th) day of the month, or the first legal banking day thereafter, shall be assessed liquidated damages in the sum of eight percent (8%) of the unpaid contributions, unless such employer files a written appeal to the Joint Conference Committee within ten (10) days of the date the employer receives written notice of delinquency from the Fringe Benefit Office. . . .
>
> In the event that any action or proceeding against any participating employers are necessary to enforce the payment of any contributions to the Fringe Benefit Funds, the trustees or the Union shall have a right to sue and recover on behalf of the funds the amount of the unpaid contributions plus the above stated liquidated damages and all costs incurred in connection therewith, together with all reasonable attorney fees.

(Doc. 29, Ex. A-4, § VIII, ¶¶ 9, 10(e)).

Pursuant to these provisions, R. Kelly's July 2011 contributions report and payment was due on or should have been postmarked by August 15, 2011. (Doc. 29, Ex. A-4, § VIII, ¶ 9;

---

[3] The parties do not dispute that R. Kelly is an "employer" as defined by the Local and National Agreements.

3

Doc. 29, Ex. A-6, ¶ 4, Affidavit of Rinda Hoffman, Administrative Manager for plaintiffs). The July 2011 payment was dated August 15, 2011, but was sent to the wrong address. (Doc. 33, Ex. B1, ¶ 3; Doc. 33, Ex. B1 at 3, Copy of July 2011 fringe benefits payment). Upon discovery of the error, R. Kelly forwarded the report and payment to the proper address. (Doc. 33, Ex. B1, ¶ 4). R. Kelly's July 2011 fringe benefits payment check was cashed by plaintiffs on September 1, 2011. (*Id.* ¶ 5; Doc. 29, Ex. A-6, ¶ 5).

As a result of the late payment, the Trustees assessed liquidated damages in the amount of $3,457.67 - eight percent of the $43,220.90 July 2011 fringe benefits payment. (Doc. 29, Ex. A-6, ¶ 6). Plaintiffs contend R. Kelly was notified of the July 2011 liquidated damages assessment on September 15, 2011 and November 3, 2011. (*Id.*, ¶ 8). However, the evidence of record demonstrates that these notifications were returned unclaimed. (Doc. 29, Ex. A-14, September and November 2011 notification letters).

On February 29, 2012, R. Kelly submitted a written request for waiver of the above liquidated damages. (Doc. 29, Ex. A-8). The record is silent as to when R. Kelly became aware of the liquidated damages assessment and the outcome of the Joint Conference Committee's determination of R. Kelly's requested waiver.

In addition to the liquidated damages claim, plaintiffs assert they are contractually entitled to an independent audit of R. Kelly's payroll records. Pursuant to the terms of the National and Local Agreements, R. Kelly is subject to the following provisions of the Local Agreement and Declaration of Trust (the Declaration):

> [T]he Trustees shall have the right . . . to have a certified public accounting firm enter upon the premises of any employer and to examine and copy such books, records, papers, and reports of the employer as may be necessary in determining

> the number and names of employees for whom contributions should be made to the Trust Fund; the number of hours worked by any/all employees for whom contributions should be made; and any other information necessary to the Trustees in performing their duties in accordance with this agreement.

(Doc. 29, Ex. A-13 at 29, § 6.3, Pension Fund Amended Agreement and Declaration of Trust, Amendment No. 1). The Declaration further provides that should legal counsel be used to aid in securing compliance by an employer with the audit provision, the employer "shall be liable for all costs incurred, including, but not limited to, reasonable attorneys' fees. . . ." *Id.*

In June 2012, plaintiffs, through an independent auditor, attempted to conduct a payroll compliance audit for the period of January 1, 2010 through December 31, 2011. (Doc. 29, Ex. A-6, ¶ 11). R. Kelly produced payroll records for union employees to the independent auditor, but not for its other, non-union, employees. (Doc. 33, Ex. 2, No. 1, Plaintiffs' Responses to Requests for Admission).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III. Resolution**

Plaintiffs assert they are entitled to summary judgment as the terms and provisions of the National and Local Agreements demonstrate that R. Kelly is obligated to pay the assessed liquidated damages given the late July 2011 fringe benefits payment. Plaintiffs further contend summary judgment is appropriate on their audit claim as the Agreements entitle them to an audit of R. Kelly's compliance records for all R. Kelly employees, not just those that are members of the union. Plaintiffs seek an order granting summary judgment in their favor on their claims; requiring R. Kelly to produce payroll records for all employees for the requested period; and awarding attorneys' fees and costs as permitted by the Agreements. The Court will first address the liquidated damages claim.

A. <u>The Liquidated Damages Claim</u>

Plaintiff's liquidated damages claim arises under 29 U.S.C. §§ 185 and 1132. Section 1132 permits the fiduciary of a multiemployer plan to collect unpaid contributions as well as interest, liquidated damages, attorneys' fees and associated costs for bringing an action to collect unpaid contributions. 29 U.S.C. § 1132(a), (g)(2). Claims for liquidated damages for delinquent contributions which are paid late, but prior to judgment, are not recoverable under 29 U.S.C. § 1132(g). *See Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 389 (6th Cir. 1991). However, such damages may be recoverable under collective bargaining agreements. *Id.* at 390. *See also Bd. of Trs. Of Ohio Laborers' Fringe Benefit Programs v. Savcon, Inc.*, No. 2:10-cv-657, 2011 WL 2633184, at *3 (S.D. Ohio July 5, 2011) ("29 U.S.C. § 185 allows [p]laintiffs to recover such damages for untimely paid contributions under the terms of a collective bargaining agreement").

In determining recoverability, "the district court should examine whether the liquidated damages provisions in the operative collective bargaining agreements constitute a penalty under federal common law." *C.J. Rogers*, 933 F.2d at 390 (citing *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 217-18 (9th Cir. 1989)). "In this regard, the Court must consider whether the harm caused by a breach of the [bargaining agreement] would be difficult or impossible to estimate, and whether the amount fixed in the liquidated damages provision of the agreement represents a reasonable forecast of just compensation for the harm caused." *Bd. of Trs. Of Ohio Laborers' Fringe Ben. Programs v. Carson Paving Co.*, No. 2:05-cv-1120, 2007 WL 852129, at *3 (S.D. Ohio Mar. 16, 2007) (citing *United Order of Am. Bricklayers and Stone Mason Unions No. 21 v. Thorleif Larson & Son, Inc.*, 519 F.2d 331, 332 (7th Cir. 1995) and *Bricklayers Pension Trust Fund v. Rosati, Inc.*,

187 F.3d 634 (table decision), No. 98-1552, 1999 WL 5603501, at *2 (6th Cir. July 7, 1999)).

Here, the undisputed evidence demonstrates that R. Kelly paid the July 2011 benefits contribution after the deadline but before plaintiffs filed this lawsuit. *See* Doc. 33, Ex. B1, ¶ 5; Doc. 29, Ex. A-6, ¶ 5). Accordingly, plaintiffs' claim for liquidated damages is not recoverable under ERISA. The relevant inquiries are thus (1) whether the collective bargaining agreements permit recovery of liquidated damages for late-paid contributions and, if yes, (2) whether the operative provisions constitute an unenforceable penalty under federal common law. *C.J. Rogers*, 933 F.2d at 390.

It is undisputed that R. Kelly is bound by the pertinent terms of the National and Local Agreements, quoted *infra* at Section I. As R. Kelly correctly notes, the National Agreement does not contain any provision entitling plaintiffs to collect liquidated damages for delinquent contributions. However, the Local Agreement includes the following provision regarding R. Kelly's duty as an employer to pay liquidated damages for late payments:

> Employers whose contributions are not received by the bank or postmarked by the fifteenth (15th) day of the month, or the first legal banking day thereafter, shall be assessed liquidated damages in the sum of eight percent (8%) of the unpaid contributions, unless such employer files a written appeal to the Joint Conference Committee within ten (10) days of the date the employer receives written notice of delinquency from the Fringe Benefit Office.

(Doc. 29, Ex. A-4, § VIII, ¶ 9). The clear and unambiguous language of this provision demonstrates that an employer such as R. Kelly whose payments are not received or postmarked by the fifteenth date of the month is liable for liquidated damages amounting to eight percent of the unpaid contributions. R. Kelly concedes that the July 2011 contribution was not timely received, but it has proffered affidavit evidence that it was post-marked on August 15, 2011. (Doc. 33, Ex. B1, ¶¶ 3-5). In support of this assertion, R. Kelly has attached a cancelled check

payable to the "Agent for Fringe Benefit Funds" which is dated August 15, 2011. *See* Doc. 33, Ex. B1 at 3. On the other hand, plaintiffs have submitted the affidavit of Ms. Hoffman, plaintiffs' Administrative Manager, who declares that plaintiffs "received R. Kelly's July 2011 Contribution Report and contribution payment in the amount of $43,220.90 on September 1, 2011. There was no post-mark date indicated on the envelope that contained R. Kelly's report and payment for July 2011." (Doc. 29, Ex. A-6, ¶ 5). Neither party has submitted the actual envelope or copy thereof in which R. Kelly's payment was mailed. Therefore, the Court finds there is a genuine dispute of material fact as to whether the July 2011 contribution payment from R. Kelly was post-marked by August 15, 2011, and thus whether plaintiffs are entitled to liquidated damages. Accordingly, plaintiffs' motion for summary judgment on their liquidated damages claim is **DENIED**.

B. The Audit Claim

Plaintiffs' audit claims seeks to enforce the following provision from the Declaration:

> [T]he Trustees shall have the right . . . to have a certified public accounting firm enter upon the premises of any employer and to examine and copy such books, records, papers, and reports of the employer as may be necessary in determining the number and names of employees for whom contributions should be made to the Trust Fund; the number of hours worked by any/all employees for whom contributions should be made; and any other information necessary to the Trustees in performing their duties in accordance with this agreement.

(Doc. 29, Ex. A-13 at 29, § 6.3, Pension Fund Amended Agreement and Declaration of Trust, Amendment No. 1).

Plaintiffs claim that under this provision, they are entitled to a payroll compliance audit of all R. Kelly employees, not just union employee records, for the period of January 1, 2010 through December 31, 2011. (Doc. 29 at 8-10). R. Kelly has produced payroll records for only union employees (Doc. 33, Ex. 2, No. 1, Plaintiffs' Responses to Requests for Admission) and

9

argues that plaintiffs are not entitled to the non-union employee records. (Doc. 33 at 5-6). R. Kelly's argument is based upon its interpretation of the Agreements' and Declaration's definition of the term "employee," which it claims does not include non-union members. For the following reasons, the Court finds that plaintiffs are entitled to summary judgment on their audit claim.

The Supreme Court has held that where parties are bound to collective bargaining agreements which provide for audits of an employer's payroll records to enable the administration of a trust, union trustees are permitted to audit the payroll records for both union and non-union employees. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985). However, the right to audit an employer's records "is limited . . . by the terms of the parties' agreements." *Trs. of Michigan Regional Council of Carpenters Employee Benefits Fund v. Exhibit Works, Inc.*, 868 F. Supp.2d 592, 602 (E.D. Mich. 2012) (internal citation omitted). Where the parties' agreements limit the scope of the audit to union employees, it cannot be expanded - "the plan documents control." *Id.*

Here, the Declaration defines "Employee" as "[a]ny person employed under a collective bargaining agreement between the Employer and the Union as defined herein, or between an employer and a union in [another] jurisdiction" as well as other specified union members. (Doc. 29, Ex. A-13, §1.2). R. Kelly asserts that this definition limits plaintiffs' right to audit his payroll records to union members only, but cites to no legal authority in support of this interpretation. (Doc. 33 at 6). In contrast, plaintiffs contend that "Employee" is defined to include non-union members performing covered work, as defined by the National Agreement. (Doc. 36 at 4). Plaintiffs' arguments are well-taken.

Trustees are entitled to use "such powers as are necessary or appropriate for the carrying out of all purposes of the trust." *Central States*, 472 U.S. at 559. Here, plaintiffs assert that an

10

audit of R. Kelly's payroll records for both union and non-union employees is necessary in order to determine "the number and names of employees for whom contributions should be made" for accurate administration of the trust funds. (Doc. 36 at 4-5, citing Doc. 29, Ex. A-13 at 29, § 6.3). As held by the Supreme Court in *Central States*, this is a valid purpose for payroll compliance audits as such information is necessary to the administration of trusts. *Central States*, 472 U.S. at 579. Further, the provisions of the Declaration provide that plaintiffs have a right to an audit of any records as may be necessary to administer the trust (Doc. 29, Ex. A-13 at 29, § 6.3), and there is no provision in the Agreements that explicitly limits the plaintiffs' audit power such that non-employee payroll records are exempt from an audit. *See Central States*, 472 U.S. at 581. The Court thus finds that under the terms of the Local and National Agreements entitling plaintiffs to audit any records that are necessary to the administration of the trust, that plaintiffs are entitled to an audit of R. Kelly's non-union employee payroll records.

The Court is further persuaded that this outcome reflects the parties' agreement given the existence of the union shop clause in the Local and National Agreements. *See* Doc. 29, Ex. A-4,§ IV, ¶ 1; Doc. 29, Ex. A-12, § V, ¶ 20. The Local and National Agreements contain the following union security clauses which contemplate that employees may be covered by the Agreements regardless of union membership:

> 1. Union Shop. The parties agree that the contractor will utilize employees who, as a condition of employment, shall be required to maintain membership in the Union on the thirtieth (30th) day following the beginning of employment or on the thirtieth (30th) day following the effective date of this agreement, whichever is later; and in the even such an employee fails to tender to the Union the periodical dues and initiation fees uniformly required as a condition of acquiring or retaining membership, the employer will dismiss such employee upon the Union's request.

(Doc. 29, Ex. A-4, § IV, ¶ 1, Local Agreement Union Shop Clause).

> Members of the Union now in the employ of the Employer shall remain members in good standing in the Union during the term of this Agreement. Employees in all classifications covered by this Agreement and hereinafter employed by the Employer shall become members of the Union on the earliest date provided by applicable federal law after their employment . . . .

(Doc. 29, Ex. A-12, § V, ¶ 20, National Agreement Union Shop Clause).

The Sixth Circuit has held that the presence of a union shop clause similar to the one in the National Agreement "suggests that 'employees covered by this agreement' may exist prior to and apart from union-member employees." *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318-19 (6th Cir. 1984). *See also Central Pension Fund of Int'l Union of Operating Engineers and Participating Employers v. Murphy's Tire, Inc.*, No. 97-cv-814, 1998 WL 865594, at *5-6 (N.D.N.Y. Dec. 9, 1988) (citing cases). If the term "employee" in the union shop clause in the instant case is interpreted to mean "union-member employee" like the union shop clause in *Kohn*, then the clause would require that "union members" must "become members of the Union," rendering the union shop clause superfluous. (Doc. 29, Ex. A-12, § V, ¶ 20) ("Employees *[union members]* in all classifications covered by this Agreement and hereinafter employed by the Employer *shall become members of the Union*."). Therefore, the inclusion of the union shop clause supports a finding that the parties intended for both union and non-union employees to be covered by the agreements. *Kohn*, 749 F.2d at 319.

For the above reasons, plaintiffs are entitled to audit R. Kelly's payroll records for all employees, including non-union employees.

C. <u>Attorneys' Fees</u>

Plaintiffs assert that they are entitled to attorneys' fees and costs for expenses related to the instant action under the agreements and under 29 U.S.C. § 1132(g)(2)(D). The Court agrees

12

that plaintiffs are entitled to attorneys' fees and costs associated with their efforts to compel R. Kelly's compliance with its audit request. The Declaration provides that "[i]n the event that the Trustees utilize legal counsel to aid them in securing compliance by any employer [in seeking a records audit], such employer shall be liable for all costs incurred, including, but not limited to reasonable attorneys' fees . . . ." (Doc. 29, Ex. A-13 at 29, § 6.3, Amendment No. 1). As the Court has determined that R. Kelly is bound by the Agreements to produce payroll records for both union and non-union employees, plaintiffs are entitled to reasonable attorneys' fees and costs under the terms of the Declaration as well as 29 U.S.C. § 1132. *See Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965, 970 (6th Cir. 1998) (finding that trustees were entitled to mandatory attorneys' fees where they brought suit under 29 U.S.C. § 1132 and judgment was entered in their favor). However, as there remains a genuine dispute as to whether R. Kelly is liable for liquidated damages, plaintiffs are not entitled to attorneys' fees or costs related to their liquidated damages claim at this juncture.

The evidence submitted by plaintiffs in support of their fee request fails to delineate the fees and costs associated with the liquidated damages claim from those incurred in conjunction with the audit claim. *See* Doc. 29, Ex. A-10, Affidavit of Attorney's Fees and billing statement. Accordingly, the Court is without an evidentiary basis upon which to determine the amount of fees and costs plaintiffs are entitled to for their audit claim. Plaintiffs shall provide the Court with a fee petition supported by evidence in accordance with S.D. Ohio Civ. R. 54.2 for their audit claim only.

D. R. Kelly's Motion to Strike (Doc. 34)

R. Kelly moves to strike from the record evidence submitted and referred to by plaintiffs in their summary judgment motion of settlement discussions between the parties. R. Kelly

asserts that such evidence is inadmissible under Fed. R. Evid. 408 and may not be used by plaintiffs to prove their claims. R. Kelly therefore requests that any reference to or evidence proffered regarding settlement discussions be stricken from the record. (Doc. 34 at 1-2).

In opposition, plaintiffs assert that Fed. R. Evid. 408 only prohibits the introduction of settlement discussion evidence where it is used to prove liability. Plaintiffs contend that they introduced evidence of settlement conversations for another purpose – "to provide a complete factual history of the administrative appeal process" and to illustrate R. Kelly's purported bad faith during the appeal process in connection with their attorneys' fees claim. (Doc. 35 at 2). Plaintiffs argue that the settlement discussions are admissible for these purposes and should not be stricken.

"[M]otions to strike are disfavored [and] a court should ignore inadmissible evidence instead of striking it from the record." *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp.2d 1037, 1041-42 (S.D. Ohio 2011) (internal citations omitted), *aff'd*, 495 F. App'x 623 (6th Cir. 2012). *See also* Fed. R. Civ. P. 56(c) advisory comm. note (2010) (at summary judgment a party may object that evidence is inadmissible; "[t]here is no need to make a separate motion to strike.").

The evidence of settlement discussions R. Kelly seeks to strike from the record was not considered by the undersigned magistrate in resolving plaintiffs' summary judgment motion because plaintiffs failed to establish the relevance and authenticity of the purported settlement. Further, this evidence was not pertinent to the instant determinations. Given that this evidence was not considered by the Court and in light of the policy disfavoring striking evidence from the record, R. Kelly's motion to strike is **DENIED** as moot. R. Kelly is free to raise objections at trial should plaintiffs seek to introduce evidence of settlement discussions.

## IV. Conclusion

For these reasons, plaintiffs' motion for summary judgment (Doc. 29) is **GRANTED in part** and **DENIED in part** and defendant's motion to strike (Doc. 34) is **DENIED** as moot.

**IT IS SO ORDERED.**

Date: 9/20/13

Karen L. Litkovitz
United States Magistrate Judge